UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:23-cr-00578-AGF |
| | ) | |
| | ) | |
| CONNIE BOBO, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES OF AMERICA'S TRIAL BRIEF AND MOTIONS *IN LIMINE* FOR PRETRIAL DETERMINATIONS OF ADMISSIBILITY**

The United States of America, by and through Thomas C. Albus, United States Attorney for the Eastern District of Missouri, and Derek J. Wiseman and Jonathan A. Clow, Assistant United States Attorneys for said District, and submits this trial brief in anticipation of trial in this matter on October 20, 2025.  In this brief, the United States provides a brief factual summary of what the evidence will establish at trial, the procedures for the forfeiture proceeding, and motions *in limine*.

**FACTUAL BACKGROUND**

Defendant Connie Bobo is charged with committing Wire Fraud, Aggravated Identity Theft, and Obstruction of Justice. As alleged in the Indictment, Defendant Bobo took millions of dollars from the State of Missouri that she agreed to spend on feeding the most vulnerable children in our community, but that she instead used to enrich herself and her family members. To execute her scheme to defraud, Defendant Bobo made a number of material misrepresentations to the State of Missouri. Those misrepresentations include lies about how she used the state's funds that she promised to spend on feeding vulnerable children, lies about the number of meals that she purportedly served those children, and lies about her charitable organization's board of directors,

which was supposed to provide oversight on Defendant Bobo's use of state meal funds. The Indictment also alleges that Defendant Bobo committed Aggravated Identity Theft by unlawfully using the identities of three individuals—A.C.F., D.H., and A.C.—to falsely claim that those individuals served on her charitable organization's board of directors. In addition, the Indictment alleges that Defendant Bobo obstructed justice by producing forged invoices in response to a federal grand jury subpoena.

**PROCEDURE AS TO THE FORFEITURE ALLEGATION**

The Indictment contains a forfeiture allegation listing certain property that is subject to forfeiture pursuant to the applicable statutory authorities.  The forfeiture issues will not be considered unless and until the jury returns a guilty verdict on one or more of the counts giving rise to the forfeiture (Counts 1–3), which invoke a proceeds theory of forfeiture—that any assets purchased with the fraudulently obtained funds are subject to forfeiture.  *See* Fed. R. Crim. P. Rule 32.2(b)(1).  After the jury returns a guilty verdict on Counts 1–3, the Court must determine what property is subject to forfeiture and the amount of any money judgment that the defendant will be ordered to pay.  Rule 32.2(b)(1)(A).[1]

Generally, the forfeiture determination is made by the court, not the jury.  *See* Rule 32.2(b)(1)(A).  The rule, however, provides the defendant with a limited right to have the jury

---

[1] The Court's determination may be based on evidence already in the record and on any additional evidence or information submitted by the parties.  Rule 32.2(b)(1)(B).  The Rules of Evidence do not apply in the forfeiture phase of the trial.  *See United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010) (because forfeiture is part of sentencing, less stringent evidentiary standards apply in the forfeiture phase of the trial; the evidence need only be "reliable"); *United States v. Capoccia*, 503 F.3d 103, 109 (2d Cir. 2007) (Rule 32.2(b)(1) allows the court to consider "evidence or information," making it clear that the court may consider hearsay; this is consistent with forfeiture being part of the sentencing process where hearsay is admissible). The burden of the United States is to establish the forfeitability of the property by a preponderance of the evidence.  *See Libretti v. United States,* 516 U.S. 29, 36 (1995) (criminal forfeiture is part of the sentence and not a substantive element of the offense, so "preponderance of the evidence" standard applies).

retained to determine the forfeitability of specific property.  Rule 32.2(b)(5).  If the jury is retained after it delivers its verdict on the charges, "[t]he only issue for the jury . . . would be whether the government has established the requisite nexus between the property and the offense" by a preponderance of the evidence. Fed. R. Crim. P. 32.2, advisory cmte. note; *see also United States v. Gregoire,* 638 F.3d 962, 972 (8th Cir. 2011) (holding that jury's role in forfeiture phase of trial is limited to determining the "forfeitability of *specific property*" (emphasis added)).  That limited right to a jury determination applies only to specific property.  There is no right to have the jury determine the amount of a money judgment that the defendant will be ordered to pay.  *See United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005) (the defendant's right under Rule 32.2(b) is to have the jury determine if the United States has established the required nexus between the property and his crime; the rule does not give the defendant the right to have the jury determine the amount of a money judgment); *see also United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011) (following *Tedder*).

To invoke this limited right, the defendant must make an election of the right to a jury determination known to the Court prior to the time the jury begins its deliberation regarding the defendant's guilt or innocence.  Rule 32.2(b)(5)(A).[2]  If the defendant fails to make a timely request to have the jury retained, her right to do so is waived.  *See United States v. Nichols*, 429 F. App'x. 355, 356 (4th Cir. 2011) (per curiam) ("[A]lthough a defendant has a right to have a jury decide a forfeiture issue, the defendant must affirmatively assert that right[.]"); *see also United States v. Hively*, 437 F.3d 752, 763 (8th Cir. 2006) (holding, under former Rule 32.2(b)(4), that

---

[2] The purpose of that provision, which was added to Rule 32.2 in 2009, is to allow the Court and the jurors to plan their calendars, and to allow the United States time to prepare special verdict forms and jury instructions, or conversely, to save the Court and the United States the judicial resources that would be wasted making such preparations if the defendant intends to waive the jury. *See* Advisory Committee Note to 2009 Amendment to Subdivision (b)(5)(A).

defendant waived his right to have the jury determine the forfeiture by not making a specific request to have the jury retained for that purpose).

In this case, the United States is seeking the forfeiture of specific property, which is described fully in the Indictment. The United States will be prepared to establish the forfeitability of the assets listed in the Indictment's forfeiture allegation by a preponderance of the evidence. Additionally, the United States does not request that any forfeiture determination be made by the jury, but respectfully requests that the Court inquire of the defendant, at the latest, prior to deliberations, whether the defendant will be invoking her limited right under Rule 32.2(b)(5) to have the jury retained.

## MOTIONS *IN LIMINE*

The United States respectfully submits the following motions *in limine* seeking pretrial determination of evidentiary issues:

| Motion # | Motion *in Limine* Description | Page # |
|---|---|---|
| 1 | Motion to Admit as Intrinsic, Relevant Evidence the Defendant's Failure to Report Fraud Proceeds as Income on her Federal Income Tax Returns | 5 |
| 2 | Motion to Preclude as Irrelevant and Prejudicial Evidence or Argument Regarding the USDA's COVID-19 Food Program Waivers | 12 |
| 3 | Motion to Preclude Defendant Bobo from Providing Unrebutted False Testimony or Argument That She Did Not Produce the Forged Invoices Charged in Counts Seven and Eight | 14 |
| 4 | Motion to Preclude Defendant Bobo from Blaming Missouri DHSS | 17 |
| 5 | Motion to Preclude an Advice of Counsel Defense | 18 |
| 6 | Motion to Preclude Improper Character Evidence, Including Specific Instances of Uncharged, Purportedly Lawful Conduct or Good Acts | 19 |
| 7 | Motion to Preclude Defendant's Introduction of Self-Serving Hearsay | 23 |
| 8 | Motion Under Fed. R. Evid. 1006 to Admit Summary Exhibits | 25 |
| 9 | Motion to Permit Use of Demonstrative Exhibits with Summary Witness Under Federal Rule of Evidence 107(a) | 28 |
| 10 | Motion to Admit Business and Public Records | 30 |
| 11 | Motion to Preclude Defendant Bobo from Claiming Ignorance of Law or Mistake of Law | 34 |

4

| Motion # | Motion *in Limine* Description | Page # |
|---|---|---|
| 12 | Motion to Preclude Defendant Bobo from Commenting on Potential Penalties or Sentence | 36 |
| 13 | Motion to Preclude Evidence or Argument Relating to Vindictive or Selective Prosecution | 38 |
| 14 | Motion to Preclude Impermissible Argument as to Missing Witnesses | 39 |
| 15 | Motion Under Fed. R. Crim. 16(b) to Exclude All Evidence Not Produced in Reciprocal Discovery | 41 |
| 16 | Motion to Permit the Introduction of Defendant Bobo's Email Records | 42 |

In support of these Motions, the United States asserts as follows:

1.      **Motion *in Limine* to Admit as Intrinsic, Relevant Evidence the Defendant's Failure to Report Fraud Proceeds as Income on her Federal Income Tax Returns**

The United States moves this Court to admit certain evidence of Defendant's failure to report as income the proceeds from the fraud scheme charged in the Indictment as relevant and intrinsic to the scheme to defraud, specifically as evidence of Defendant's knowledge and intent to defraud.  In the alternative, the United States seeks to introduce such evidence as "other acts" evidence that is admissible for a proper purpose pursuant to Federal Rule of Evidence 404(b).

At trial, the United States intends to admit a signed, certified letter from the Internal Revenue Service (IRS) indicating that neither Defendant Bobo nor New Heights filed federal income tax returns for tax years 2020 through 2022.[3]  As alleged in the Indictment, Defendant Bobo perpetrated her scheme to defraud Missouri DHSS between at least February 2017 and

---

[3] The IRS failure-to-file letter falls under the Rule 803(10) hearsay exception for absence of a public record and can be admitted as a sealed and signed public document under Rule 902(1).  Rule 803(10) provides that a "certification under Rule 902 . . . that a diligent search failed to disclose a public record" if admitted to prove the record does not exist is not hearsay.   In turn, Rule 902(1) states that a document bearing (a) the seal of a department of the Untied States and (b) a signature purporting to be an execution or attestation is self-authenticating and requires no extrinsic evidence of authenticity in order to be admitted.  *See also United States v. Bisbee*, 245 F.3d 1001, 1006–07 (8th Cir. 2001) (upholding trial court's admission of an IRS record under FRE 902(1)).  Here, a disclosure specialist with the IRS has applied an official seal and her signature to the failure-to-file letter, certifying to its authenticity.  As such, the letter is self-authenticating and admissible under the Rules of Evidence.

5

continuing through at least October 2023.  The Indictment further alleges that, over the course of her scheme, Defendant obtained over $19 million in state meal reimbursement funds from Missouri DHSS based on material misrepresentations made to the agency, the vast majority of which Defendant spent on her own, personal expenses between 2020 and 2022.  Thus, in years when Defendant fraudulently obtained millions of dollars in ill-gotten funds, Defendant did not report any of these criminal proceeds as income to IRS.  As such, the United States does not seek to admit this evidence to establish Defendant's propensity for criminal activity or to inculpate her for uncharged tax crimes.  Rather, Defendant's failure to report her fraud proceeds as income is evidence of her knowledge that these proceeds were unlawfully obtained and her intent to defraud, and consequently it is intrinsic, relevant evidence of elements of the fraud scheme charged in the Indictment.

> **A.** **Defendant's failure to report her fraud proceeds as income on her federal income tax returns is intrinsic evidence of her knowing participation in the scheme to defraud and her intent to defraud.**

Intrinsic evidence is that which "relate[s] to an integral part of the immediate context of the crime charged." *United States v. LeCompte*, 108 F.3d 948, 952 (8th Cir. 1997) (citing *United States v. Waloke*, 962 F.2d 824, 828 (8th Cir. 1992)); *United States v. Bass*, 794 F.2d 1305, 1312 (8th Cir.) cert. denied, 479 U.S. 869 (1986). The Eighth Circuit has repeatedly recognized that "[w]here evidence of other crimes is so blended or connected, with the ones on trial as that proof of one incidentally involves the others; or explains the circumstances; *or tends logically to prove an element of the crime charged*, it is admissible as an integral part of the immediate context of the crime charged." *United States v. Luna*, 94 F.3d 1156, 1162 (8th Cir. 1996) (emphasis added); *United States v. Derring*, 592 F.2d 1003, 1007 (8th Cir. 1979); *United States v. Mandacina*, 45 F.3d 1177, 1188 (8th Cir. 1995).  "[S]uch acts are not truly separate bad acts that show propensity,

but are intrinsic evidence which is inextricably intertwined with the crime charged." *United States v. Maxwell*, 643 F.3d 1096, 1100 (8th Cir. 2011) (quoting *United States v. Heidebur*, 122 F.3d 577, 579 (8th Cir. 1997)).

Here, Defendant is charged with multiple counts of wire fraud in connection with her scheme to defraud Missouri DHSS of state meal reimbursement funds. To convict Defendant of wire fraud, two elements the United States must prove at trial are that 1) Defendant knowingly devised a scheme to defraud Missouri DHSS and 2) she did so with the intent to defraud. *See United States v. Louper-Morris*, 672 F.3d 539, 556 (8th Cir. 2012) ("Intent is an essential element of . . . wire fraud . . . ."). The Eighth Circuit has repeatedly held that evidence of fraudulent intent may be established by circumstantial evidence. *See United States v. Ervasti*, 201 F.3d 1029, 1037 (8th Cir.2000) ("Absent an outright admission of intent to defraud, the requisite intent can be shown by circumstantial evidence."); *see also United States v. Hansen*, 791 F.3d 863, 867 (8th Cir. 2015); *United States v. Berndt*, 86 F.3d 803, 809 (8th Cir. 1996) ("Intent is an essential element of the crime of mail fraud, but the jury may properly infer that intent from circumstantial evidence.").

A defendant's failure to pay income taxes on fraud proceeds provides such circumstantial evidence of fraudulent intent. *See, e.g.*, *United States v. Cammarata*, 145 F.4th 345 (3d Cir. 2025); *United States v. Constantine*, No. 23-6440, 2025 WL 601201, at *3 (2d Cir. 2025) (citing *United States v. Valenti*, 60 F.3d 941, 946 (2d Cir. 1995)); *United States v. Ryan*, 213 F.3d 347 (7th Cir. 2000). For instance, in *United States v. Cammarata*, the defendant was convicted of wire fraud in connection with his company's scheme to fraudulently obtain class-action-settlement funds through the submission of false claims to class action administrators. 145 F.4th at 347. The defendant testified at trial and, on appeal, challenged the prosecution's use of his income tax

returns to question him on cross-examination. *Id.* at 365–66. Specifically, the defendant claimed his failure to report fraudulently obtained settlement funds as income on his tax returns was irrelevant evidence of an uncharged tax crime; was Rule 404(b) evidence, for which he had not received notice; and was unfairly prejudicial under Rule 403. *Id.* at 366. The Third Circuit rejected all three arguments and found Rule 404(b) inapplicable because the defendant's failure to report this income was intrinsic to his fraud scheme. *Id.* at 367. The Court reasoned the defendant's failure to report these funds on his tax returns "supported a reasonable inference that he knew the funds were unlawfully obtained and that he was attempting to conceal income derived from his fraudulent scheme." *Id.* Because "[s]uch inference would bear on [the defendant's] intent to defraud," the Third Circuit concluded defendant's tax returns constituted circumstantial evidence of an element of his offense, were intrinsic to the charged offense, and were therefore properly admitted. *Id.*

Likewise, in *United States v. Ryan*, the Seventh Circuit upheld the admissibility of a defendant's failure to report income from kickback payments he received in exchange for his participation in a bank fraud scheme. 213 F.3d at 349–50. Rejecting defendant's argument his tax returns were inadmissible "other bad acts" evidence, the Court saw "no need to engage in Rule 404(b) analysis [] because it is clear from the record that this evidence was 'intricately related' to the bank fraud offense." *Id.* at 350. That is because defendant's failure to report his criminal proceeds as income on these returns "is evidence of a cover-up [or] attempted cover-up, which has generally been held to be admissible as far as casting some reflection on how the defendant evaluated his own conduct." *Id.* (quotations omitted). As such, the Seventh Circuit determined the defendant's failure to report his proceeds from the bank fraud scheme was his "efforts to

8

conceal his participation in the bank fraud scheme" and "highly probative of his specific intent to commit bank fraud." *Id.* at 351.

The Eighth Circuit has similarly recognized that a fraud defendant's failure to pay taxes in connection with her fraud scheme can provide evidence of fraudulent intent.  In *United States v. Campbell*, the defendant was charged with, *inter alia*, wire fraud relating to the sale of a boat. 937 F.2d at 407. Campbell was alleged to have defrauded a customer by "selling him a boat, then wrongfully retaining proceeds and failing to pay off the holder of the security interest, which would have enabled Van Dolah to obtain legal title to the boat." *Id.* At trial, the government submitted evidence that Campbell had failed to pay sales tax on the sale of the boat, despite having been given the money to do so by the defrauded purchaser of the boat. *Id.* On appeal, Campbell argued that the district court had erred in admitting that evidence and asserted that the defendant's failure to pay taxes on the boat sale was not relevant to the wire fraud charge. *Id.* The Eighth Circuit found no abuse of discretion in the district court's admission of evidence regarding the failure to pay the sales tax, finding that the evidence was admissible both as relevant intrinsic evidence that was "but one aspect of a single fraudulent transaction," and "to show Campbell's intent under Rule 404(b) to defraud Van Dolah." *Id.* In affirming the district court's determination that the failure to pay the taxes was admissible, intrinsic evidence, the Eighth Circuit cited *United States v. Derring*'s observation that "'evidence of other crimes may be presented when "they are so blended or connected with the one on trial ... that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." *Id.* at 407 (citing *Derring*, 592 F.2d 1003, 1007 (8th Cir.1979) (internal citation omitted)).

The same reasoning applies here.  Defendant Bobo's failure to pay taxes on fraudulent income is admissible intrinsic evidence of two elements the United States must prove at trial:

9

Defendant's knowledge and intent to defraud.  Consistent with *Cammarata*, *Ryan*, and *Campbell*, Defendant's failure to report these funds as income to the IRS supports a reasonable inference that she knew the funds were unlawfully obtained and was attempting to conceal her fraud scheme.  In other words, Defendant's failure to report her criminal proceeds as income shows that Defendant viewed this money as exactly that—criminal proceeds.  Because Defendant's awareness that these proceeds were illegally obtained demonstrates her intent to defraud, her failure to report these proceeds as income is intrinsic evidence of her fraud scheme and, therefore, the IRS failure-to-file letter is relevant and admissible.

> **B.    Even if the Court were to determine that Defendant's failure to report her fraud proceeds as income is not intrinsic evidence of her scheme to defraud, such evidence is admissible under Rule 404(b) as evidence of Defendant's intent, preparation, plan, knowledge, and absence of mistake or accident.**

Because intrinsic evidence is directly related to the crimes charged, the Court need not evaluate the evidence under Rule 404(b).  *See Bass*, 794 F.2d at 1312.  But even if the Court were to find evidence of Defendant's failure to disclose her fraud proceeds as income to the IRS is not intrinsic to her scheme to defraud, such evidence is otherwise admissible under Rule 404(b) as other acts showing Defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."  Fed. R. Evid. 404(b); *United States v. Walker*, 428 F.3d 1165, 1169 (8th Cir. 2005).  "To be admissible under Rule 404(b), the evidence must be: (1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged."  *Campbell*, 937 F.2d at 406.  "The district court has broad discretion in deciding whether to admit evidence of other wrongful acts, and its decision will not be overturned without a clear showing that the requirements for admitting such evidence have not been met."  *Id.*

10

Here, Defendant's failure to report her fraud proceeds as income is relevant to multiple permissible purposes under Rule 404(b).  Such evidence is relevant to establish Defendant's motive, namely, the gain and retention of fraud proceeds.  As discussed in the previous section, it is also relevant to establish her knowledge and intent—Defendant's failure to declare her illegally obtained funds from Missouri DHSS demonstrates her knowing participation in the scheme and her intent to defraud DHSS. *See Campbell*, 937 F.2d at 407; *see also United States v. Midkiff*, 614 F.3d 431, 441 (8th Cir. 2010) (finding no misjoinder of tax and fraud charges because evidence defendant failed to file taxes would have been admissible at fraud trial as evidence of knowledge and intent under Rule 404(b)).  Further, Defendant's concealment of her illicitly obtained income demonstrates her plan, knowledge that the income was the product of fraud, and absence of mistake or accident.  Had Defendant not believed or been unaware that there were material misrepresentations in the budgets, management plans, and reimbursement claims she submitted to Missouri DHSS, there would be no reason to conceal reimbursement funds from Missouri DHSS from the IRS.

In sum, Defendant's failure to report her fraudulent income from Missouri DHSS makes it more likely that he intended to defraud Missouri DHSS.  The United States will prove by a preponderance of the evidence through the Missouri DHSS records, Defendant's bank records, and the testimony of an FBI forensic accountant, among other evidence, that Defendant received millions of dollars in income from Missouri DHSS that Defendant did not report to the IRS.  In particular, the time period in which Defendant failed to report income obtained from Missouri DHSS on her federal income tax returns overlaps with same time period in which Defendant submitted fraudulent documents and reimbursement claims to Missouri DHSS as part of her fraud scheme. As such, Defendant's failure to file taxes is similar in kind and close in time to the crime

11

charged.  For these reasons, Defendant's failure to report her fraud proceeds as income is also admissible under Rule 404(b).

**2.      Motion *in Limine* to Preclude as Irrelevant and Prejudicial Evidence or Argument Regarding the USDA's COVID-19 Food Program Waivers**

Under Eighth Circuit precedent, the United States moves to preclude, as irrelevant and confusing, evidence or argument as to the USDA waivers enacted during the COVID-19 pandemic. The United States believes that such a pretrial ruling is necessary in this case because Defendant Bobo, through counsel, has previously indicated that she intends to pursue such irrelevant evidence and argument at trial.  For example, Defendant Bobo has previously referenced, through counsel, two inapplicable waivers issued by the USDA during the COVID-19 pandemic: **(1)** a waiver allowing states to approve charities' requests to relax the non-milk meal pattern requirements;[4] and **(2)** another waiver extending the Summer Food Service Program to December 2020.[5] Because none of the USDA waivers enacted during the COVID-19 pandemic—including the ones referenced above—have a bearing on the truth or falsity of Defendant Bobo's material misrepresentations alleged in the Indictment,  the waivers are irrelevant and inadmissible. *See* Fed.R.Evid. 401, 403.

The Eighth Circuit has consistently rejected similar evidence in the context social security fraud.  For example, in *United States v. Lemons*, the Eighth Circuit rejected a social security fraud

---

[4] *See* United States Department of Agriculture, Food and Nutrition Service, Nationwide Waiver to Allow Meal Pattern Flexibility in the Child Nutrition Programs (2020) ("USDA Food Requirement Waiver"). Under this waiver, the USDA allowed states to consider requests from charities to relax the non-milk nutritional requirements for the meals served by those charities. *Id.*

[5] *See* United States Department of Agriculture, Food and Nutrition Service, Nationwide Waiver to Allow Summer Food Service Program and Seamless Summer Option Operations through December 2020 (2020) ("USDA SFSP Extension Waiver"). Under this waiver, the USDA allowed states to extend the Summer Food Service Program, which did not impact Defendant Bobo's participation in the Child and Adult Care Food Program. *Id.*

defendant's claim that the district court had erred by determining that Social Security Administration program regulations were not relevant.  792 F.3d 941, 949–50 (8th Cir. 2015). Rejecting the defendant's claim, the Eighth Circuit concurred with the district court's assessment that "[t]he regulatory procedure by which the government manages overpayments either was not relevant, or any minimal probative value was substantially outweighed by a danger of confusing the issues and needlessly presenting cumulative evidence." *Id.*  Similarly, in *United States v. Henderson*, the Eighth Circuit affirmed the defendant's conviction for wire fraud in connection with her submission of false statements to the Social Security Administration, finding that "[c]ontrary to Henderson's assertion, the jury was not asked to measure Henderson's eligibility against SSA's regulations, but to decide whether she misrepresented or omitted material facts to SSA."  416 F.3d 686, 690 (8th Cir. 2005).

Here, as in *Henderson* and *Lemons*, Defendant Bobo is not charged with violating the USDA's waiver provisions, but rather with executing a scheme to defraud the Missouri Department of Health and Senior Services by making the material misrepresentations alleged in the Indictment.  Because none of the USDA waivers enacted during the COVID-19 pandemic have a bearing on the truth or falsity of Defendant Bobo's material misrepresentations alleged in the Indictment, the waivers are irrelevant and inadmissible.  Not only are those waivers irrelevant, but they create the very risk of jury confusion that the Eighth Circuit recognized in *Lemons*.  *See also United States v. Crowther*, Order at 7, 2:20-cr-00114-JLB-MRM (M.D.Fl. November 13, 2020), ECF No. 56, *aff'd* 2023 WL 3813509, at *1 (11th Cir. June 5, 2023) (rejecting the defendant's contention that his conduct had not violated PPP program regulations, noting that "Mr. Crowther is not accused of violating the CARES Act.  The superseding indictment charges him with multiple counts of bank fraud, making false statements to lending institutions, and conducting illegal

monetary transactions. . . . None of these offenses depend on an underlying violation of the CARES Act."). Therefore, this Court should preclude, as irrelevant and confusing, evidence or argument as to the USDA waivers enacted during the COVID-19 pandemic.

**3.      Motion *in Limine* to Preclude Defendant Bobo from Providing Unrebutted False Testimony or Argument That She Did Not Produce the Forged Invoices Charged in Counts Seven and Eight**

The United States moves this Court to preclude Defendant Bobo from providing unrebutted false testimony or argument that she did not produce the forged invoices that are charged in Counts Seven and Eight. If Defendant Bobo intends to provide this false testimony or argument at trial, the United States moves this Court for an order allowing the United States to call as a trial witness Defendant Bobo's prior counsel, Marc Johnson, so that his testimony and his electronic correspondence with Defendant Bobo can rebut her false argument and testimony. As further detailed herein, such an order is necessary to prevent unnecessary delay during the middle of the trial.

**A.      Background**

During the pre-indictment investigation of Defendant Bobo for her crimes, the United States served Defendant Bobo with a grand jury subpoena for records (including for the food purchase invoices supporting her reimbursement claims to the State of Missouri). In response, Defendant Bobo's then-retained counsel, Marc Johnson, provided the responsive records to the United States that he received from Defendant Bobo. Included in Defendant Bobo's production were the forged invoices that are referenced in the Obstruction of Justice counts (Counts Seven and Eight). As detailed in the Indictment, the forged invoices produced by Defendant Bobo made it appear as if she purchased more qualifying food and milk than she actually did. After being charged in this case, Defendant Bobo's prior attorney, Marc Johnson, withdrew as counsel of

14

record and he is no longer representing Defendant Bobo in this matter. Based on Defendant Bobo's history of making false statements, the United States is concerned that she may attempt to provide false testimony or argument that she did not produce the forged invoices that are charged in Counts Seven and Eight.

### B.    Analysis

Under Eighth Circuit precedent—and consistent with court holdings from across the country—Defendant Bobo cannot argue or testify that she did not produce the forged invoices charged in Counts Seven and Eight without waiving the attorney-client privilege. That conclusion is demanded by the Eighth Circuit's holding in *United States v. Hahn*, 58 F.4th 1009 (8th Cir. 2023). In *Hahn*, the defendant signed a plea agreement with the United States, which was provided to the United States by his defense counsel in advance of the plea hearing. *Id.* at 1011. Before pleading guilty, however, the defendant "dismissed [his] counsel and withdrew his notice to plead guilty, arguing that he never accepted the terms of the [signed] agreement and did not knowingly and voluntarily waive his rights." *Id.* at 1012. Based on the defendant's argument, the district court and the Eighth Circuit reached two conclusions: (1) that the defendant "waived his attorney-client privilege," and (2) that the defendant's prior counsel could provide trial testimony to rebut the defendant's claim that he did not accept his signed plea agreement. *Id.* Those same conclusions will apply here with equal force should Defendant Bobo falsely testify or argue that she did not produce the forged invoices.

That is because, as the Second Circuit correctly held, "the attorney-client privilege cannot at once be used as a shield and a sword . . . Thus, the privilege may implicitly be waived when [a] defendant asserts a claim that in fairness requires examination of protected communications." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (cleaned up); s*ee also United States*

15

*v. Jaunich*, No. CRIM. 13-183 JRT/LIB, 2014 WL 1026331, at *9 (D. Minn. Mar. 14, 2014) ("[A] defendant waives attorney-client privilege if he voluntarily testifies about communications with his attorney[.]"). Therefore, if Defendant Bobo falsely testifies or argues that she did not produce the forged invoices that she did—in fact—produce through her prior counsel, she will have waived the attorney-client privilege, and the United States can call her prior counsel to rebut her false argument or testimony.

To prevent an unnecessary delay in the middle of trial, the United States requests that Defendant Bobo provide immediate notice of her intent to provide argument or testimony that she did not produce the forged invoices charged in Counts Seven and Eight. Without such notice, the United States would be forced to wait until the middle of trial to take the following necessary steps: (1) subpoena her prior counsel for his testimony and for the electronic communications which directly rebut Defendant Bobo's false claim; (2) review the electronic communications between Defendant Bobo and her prior counsel, and (3) interview Defendant Bobo's prior counsel.

### C.      Conclusion

For the reasons laid out above, the United States moves this Court to preclude Defendant Bobo from providing unrebutted false testimony or argument that she did not produce forged invoices charged in Counts Seven and Eight. If Defendant Bobo intends to provide this false testimony or argument at trial, the United States moves this Court for an order allowing the United States to call as a trial witness Defendant Bobo's prior counsel, Marc Johnson, so that his testimony and his electronic correspondence with Defendant Bobo can rebut her false argument and testimony.

**4.        Motion *in Limine* to Preclude Defendant Bobo from Blaming Missouri DHSS**

The United States moves to preclude Defendant Bobo from arguing that she did not defraud Missouri DHSS, or did not know her conduct was fraudulent, because Missouri DHSS failed to detect Defendant's fraud and paid state meal reimbursement funds to Defendant based on her fraudulent reimbursement claims and material misrepresentations to the state.   These kind of "victim blaming" arguments are irrelevant to the issue that the jury must decide:  whether or not Defendant Bobo is guilty of the offenses charged in the Indictment.

"[A] fraud victim's negligence is not a defense to criminal charges under the federal fraud statutes." *United States v. Kock*, 66 F.4th 695, 705 (8th Cir. 2023); *see also United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009) ("A perpetrator of fraud is no less guilty of fraud because his victim is also guilty of negligence."). To permit such a defense "would invite con men to prey on people of below-average judgment or intelligence, who are anyway the biggest targets of such criminals and hence the people most needful of the law's protection." *Kock*, 66 F. 4th at 705. The rule prohibiting the "victim blaming" defense bars any argument that "a victim's diligence is relevant in determining whether a misrepresentation has been made." *Id.* (approving jury instruction providing that "[i]t is not relevant, and not a defense, that the Internal Revenue Service failed to detect the fraudulent nature of the scheme, nor is it relevant that the Internal Revenue Service might have acted with greater diligence.").

In short, whether Missouri DHSS could have, or should have, detected or rejected the fraudulent reimbursement claims submitted by Defendant Bobo is irrelevant to her guilt or innocence. *Id.* ("[T]he IRS's diligence is immaterial in this prosecution.").  Defendant should therefore be precluded at trial from attempting to shift blame for her fraud onto Missouri DHSS.

17

**5.      Motion *in Limine* to Preclude an Advice of Counsel Defense**

According to the Eighth Circuit, "[t]o rely upon the advice of counsel in his defense, a defendant must show that he: (i) fully disclosed all material facts to his attorney before seeking advice; and (ii) actually relied on his counsel's advice in the good faith belief that his conduct was legal." *United States v. Naushad*, 68 F.4th 380, 387 (8th Cir. 2023) (quoting *United States v. Wolfe*, 781 Fed. Appx. 566, 568 (8th Cir. 2019)).  The Eighth Circuit has added that "[a] defendant is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction." *United States v. Petters*, 663 F.3d 375, 384 (8th Cir. 2011).  When a defendant raises the advice of counsel defense, the attorney-client privilege is waived. *United States v. Workman*, 138 F.3d. 1261, 1263–64 (8th Cir. 1998).  Along with a waiver of the attorney-client privilege, a defendant must also provide sufficient pre-trial discovery of attorney-client communications to justify the defense.  This discovery requirement is imposed by courts in part so that the trial court is afforded an opportunity to determine whether a sufficient foundation exists to support presentation of the defense to the trier of fact.  *See*, *e.g.*, *United States v. Wolfe*, 781 F. App'x 566, 569 (8th Cir. 2019) (affirming district court's grant of government's motion *in limine* prohibiting defendant from raising an advice of counsel defense at trial because of defendant's failure to proffer evidence establishing full disclosure and reliance).

Indeed, courts across the country require that defendants provide sufficient pre-trial notice of an advice of counsel defense and that defendants disclose the necessary discovery to support such a defense adequately in advance of trial.  *See e.g.*, *United States v. Crowder*, 325 F. Supp. 3d 131, 139 (D.D.C. 2018) (requiring defendant to provide notice and discovery as to any potential advice of counsel defense two weeks prior to trial); *United States v. Cooper*, 283 F. Supp. 2d 1215, 1225 (D. Kan. 2003) (same); *see also United States v. Brik*, No. 15-CR-78 (SRN/BRT), 2016 WL

3753080, at *3 (D. Minn. July 11, 2016) ("Failure to promptly disclose an advice-of-counsel defense may constitute waiver of the defense."); *United States v. Dallmann*, 433 F. Supp. 3d 804, 812-13 (E.D. Va. 2020) (holding that courts have inherent authority to impose requirement of pretrial notice of advice-of-counsel defense and requiring notice ten days prior to trial in light of complexity of advice-of-counsel defense and potential for discovery of otherwise-privileged documents).

The United States has requested that Defendant Bobo provide notice of her intent to assert an advice of counsel defense.  Defendant Bobo has not provided any such notice, nor has she produced any attorney-client communications that would justify an advice of counsel defense.  For those reasons, the United States moves this Court for an order to preclude any advice of counsel defense.

6.     **Motion *in Limine* to Preclude Improper Character Evidence, Including Specific Instances of Uncharged, Purportedly Lawful Conduct or Good Acts**

The United States moves *in limine* for an order limiting the testimony of any defense character witnesses to their opinions about Defendant Bobo's honesty, truthfulness, and being law abiding, and the defendant's reputation in the community for the same.  In particular, the Court should prohibit defense counsel from introducing evidence concerning other uncharged occasions of purportedly lawful conduct, charitable acts, or good deeds.  Such evidence is irrelevant and inadmissible character evidence under Fed.  R.  Evid.  404(a)(1) and 403.

A.     **Defendant may only offer character evidence of a pertinent trait and is not permitted to offer such evidence in the form of specific instances of conduct.**

While defendants in criminal cases may offer character evidence at trial, they are limited in the subject matter and form of such evidence.  Federal Rule of Evidence 404(a)(2)(A) limits admissible character evidence offered by a defendant to evidence of a "pertinent trait."  A pertinent

character trait is one that is relevant to the offenses charged. *United States v. John*, 309 F.3d 298, 303 (5th Cir. 2002). Federal Rule of Evidence 405(a) provides that character witnesses may testify concerning a pertinent trait in the form of an opinion or by testimony about the person's reputation in the community. *United States v. Drapeau*, 644 F.3d 646, 654 (8th Cir. 2011) ("In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion."). Taken together, these rules permit character evidence, normally considered to be propensity evidence, to be introduced by a defendant in a criminal case to imply that the defendant is unlikely to have committed the crime. *United States v. Monteleone*, 77 F.3d 1086, 1089 (8th Cir. 1996) ("Character evidence is undeniably relevant in determining probabilities of guilt.") (citing *Michelson v. United States*, 335 U.S. 469, 476 (1948)).

Where, as here, a character trait is not an element of the charge or a defense, defendants are not permitted to offer evidence in the form of specific instances of conduct to prove said character or a character trait. Fed. R. Evid. 405(b). Accordingly, defense character witnesses should be limited to identifying themselves, indicating how long and in what capacity they have known the defendants, and then stating their opinion about the pertinent trait or the defendant's reputation for that pertinent trait in the community. *See United States v. Kinsella*, 545 F. Supp. 2d 158, 161 (D. Me. 2008) ("A defendant is thus permitted to call a witness, establish his contemporaneous and relevant knowledge of the defendant's reputation, and elicit a favorable response. He is not permitted to ask questions about specific instances of good conduct or specific character traits.").

> **B.    Defendant cannot offer evidence of purportedly lawful behavior on other occasions, because any such prior actions are irrelevant to the charged conduct and inadmissible character evidence.**

20

A defendant cannot introduce evidence of other specific acts of purportedly law-abiding behavior to establish his innocence of criminal conduct.  Evidence of non-criminal conduct on occasions, separate from those charged, is not admissible because the evidence involves totally different incidents and is not probative of the defendant's acts and intent related to the charges in the Indictment.  *See, e.g.*, *United States v.  Ahmed*, 73 F.4th 1363, 1384 (11th Cir.  2023) ("Evidence of good conduct is not admissible to negate criminal intent." (alterations in original)); *United States v.  Grimm*, 568 F.2d 1136, 1138 (5th Cir.  1978) ("Evidence of non-criminal conduct to negate inference of criminal condition is generally irrelevant"); *United States v.  Scarpa*, 897 F.2d 63, 70 (2d Cir.  1990) ("A defendant may not seek to establish his innocence . . .  through proof of the absence of criminal acts on specific occasions."); *United States v.  Qaoud*, 777 F.2d 1105, 1111 (6th Cir.  1985) (finding no error in excluding testimony of an influence peddler that the defendant, a judge, did not accept kickbacks from him).  As courts have recognized, "[a] single occurrence of lawful conduct is 'simply irrelevant' to other occurrences of unlawful conduct." *United States v.  Chambers*, 800 Fed.  Appx.  43, 46 (2d Cir.  2020); *see also United Stats v. Marrero*, 904 F.2d 251, 260 (5th Cir.  1990) ("The fact that Marrero did not overcharge in every instance in which she had an opportunity to do so is not relevant to whether she, in fact, overcharged as alleged in the indictment.").

Accordingly, the United States requests that the Court exclude any evidence of specific acts offered to establish the trait of being law abiding and limit testimony to opinion and reputation evidence.  As permitted by Rule 405(a), the United States will cross examine the character witnesses with specific instances of Defendant's conduct to test the character witnesses' knowledge of Defendant's reputation and the bases for their opinions and statements concerning her reputation.

**C.**  **Defendant cannot offer evidence of specific instances of conduct where Defendant Bobo purportedly performed charitable acts or helped individuals in the community.**

The United States anticipates that Defendant Bobo may call witnesses to testify about her past generosity to those in need, including her operation of non-profit organizations and providing services to disadvantaged, underserved areas and communities through those organizations.  The United States will oppose, and requests that the Court exclude, any evidence offered by character witnesses, or by Defendant Bobo if she testifies, that she is generous, is charitable, or has helped individuals or the general community.

Evidence of the traits of being generous and charitable has been excluded by courts across the country because those traits are not essential elements of the offenses charged or the defenses thereto.  *United States v. Manfredi*, 2009 WL 3762966, *3-4, D.Pa., 2009 (holding generosity not relevant in case involving conspiracy, tax evasion, and unlawful structuring of currency transactions); *United States v. Gupta*, 747 F.3d at 139-40 (holding evidence of planned donations to charity not admissible in case involving securities fraud and conspiracy to commit securities fraud); *United States v. Gravely*, 840 F.2d 1156, 1164 (4th Cir.  1988) (holding no error in excluding evidence of specific activities with March of Dimes).

Similarly, this Court should exclude any argument or evidence to suggest to the jury that Defendant Bobo is a "good person."  The United States will oppose, and requests the Court to exclude, such evidence as irrelevant.  *See United States v. Santana-Camacho*, 931 F.2d 966, 967-68 (1st Cir.  1991) (evidence of being a "good family man" excluded where charge was illegally bringing a person into the United States).  Such evidence will work to distract the jury and invites the jury to decide the case on an improper basis.

**7.    Motion *in Limine* to Preclude Defendant's Introduction of Self-Serving Hearsay**

During the trial of this matter, Defendant Bobo may attempt to introduce self-serving hearsay through the cross-examination of government witnesses or through defense witnesses other than Defendant Bobo herself.  When the United States offers a defendant's statements in evidence, the statements are the non-hearsay admissions of a party opponent under Fed. R. Evid. 801(d)(2)(A).  However, "[w]hen offered by the Defendant, such statements are classic, self-serving inadmissible hearsay.  It is well accepted that 'a party's own statement is admissible as non-hearsay only if it is offered against that party.'" *United States v. Bravata*, No. 11-CR-20314, 2013 WL 692955, at *1 (E.D. Mich. Feb. 26, 2013) (citing *Stalbosky v. Belew*, 205 F.3d 890, 94 (6th Cir. 2000)); *see also Williamson v. United States*, 512 U.S.  594, 618 (1994) ("In the criminal context, a self-serving statement is one that tends to reduce the charges or mitigate the punishment for which the declarant might be liable."); Fed. R. Evid. 802 (providing that hearsay is inadmissible).

The Eighth Circuit has made abundantly clear that "no abuse of discretion lies in a district court's refusal to admit evidence of self-serving statements of innocence made by the defendant after the offense was discovered."  *United States v. Woosley*, 761 F.2d 445, 449 (8th Cir. 1985).  "Such evidence lacks the required indicia of trustworthiness and reliability which support the admission of hearsay under exceptions to the hearsay rule."  *Id.*; *see also United States v. Griffin*, 215 F.3d 866, 868 (8th Cir. 2000) (upholding trial court's ruling excluding self-serving hearsay statements made by the defendant to other people).

There is no rule that allows the introduction of a defendant's out-of-court exculpatory statements by the defendant.  If the United States introduces the incriminating portions of the defendant's statements, she is not thereby permitted to introduce any exculpatory statements

23

pursuant to the "rule" or "doctrine" of "completeness" rationale drawn from Rule 106 of the Federal Rules of Evidence.   Introduction under this rule would also be improper.

Federal Rule of Evidence 106 requires that, "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part of any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  However, as the Eighth Circuit has observed, "Rule 106, the rule of completeness . . . does not empower a court to admit unrelated hearsay in the interest of fairness and completeness when that hearsay does not come within a defined hearsay exception." *United States v. Ramos-Caraballo*, 375 F.3d 797, 803 (8th Cir. 2004) (cleaned up).[6]

The Eighth Circuit has repeatedly held that a defendant may not introduce his or her own hearsay statements pursuant to Rule 106 unless the admission of additional statements by the defendant is necessary to correct a misleading impression.  *See, e.g., United States v. Ali*, 47 F.4th 691, 699 (8th Cir. 2022) ("[T]he Rule [of Completeness] does not empower a court to admit unrelated hearsay in the interest of fairness and completeness when that hearsay does not come within a defined hearsay exception.") (cleaned up); *United States v. Edwards*, 159 F.3d 1117, 1127 (8th Cir. 1998) (same); *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987) (same). As such, Defendant Bobo cannot introduce her own exculpatory statements in this case under the "rule of completeness" absent a showing that her additional statements are necessary to correct a false or misleading impression.

---

[6] The 2023 amendment to Rule 106 added the caveat that a party seeking to introduce any other part of a statement in the interests of fairness "*may* do so over a hearsay objection." (emphasis added).  The 2023 amendment to Rule 106 *does not* create an open invitation to parties to admit otherwise inadmissible hearsay under the guise of "completeness."  In order to admit additional hearsay statements of the defendant, Defendant Bobo must show that those additional otherwise inadmissible hearsay statements are necessary to correct a false or misleading impression.

**8.**     **Motion *in Limine* Under Fed. R. Evid. 1006 to Admit Summary Exhibits**

The United States intends to offer into evidence the following summary exhibits under Federal Rule of Evidence 1006:

**(1)** Exhibits summarizing voluminous bank records, food invoices/receipts, Defendant Bobo's state meal contracts, MO DHSS and Defendant Bobo's state meal training records, and Defendant Bobo's meal reimbursement claims that she made to Missouri DHSS;

**(2)** Exhibits summarizing voluminous bank records, real estate purchase records, asset purchase records, construction contracts, Google subscriber records, Missouri Secretary of State business registration records, Defendant Bobo's state meal contracts, MO DHSS and Defendant Bobo's state meal training records, Defendant Bobo's electronic communications to the State of Missouri, including her Management Plans and Budgets, and photographs of the assets purchased by Defendant Bobo with state meal funds;

**(3)** Exhibits summarizing Missouri DHSS audit findings, meal records, and Defendant Bobo's email communications with Missouri DHSS;

**(4)** Exhibits summarizing food distribution site records, Defendant Bobo's meal reimbursement claims that she made to Missouri DHSS,  Defendant Bobo's meal count and attendance records that she produced in response to a federal grand jury subpoena.

**(5)** Exhibits summarizing bank records, real estate purchase records, asset purchase records, construction contracts, and tax records reflecting that Defendant Bobo did not pay income taxes during her scheme to defraud; and

**(6)** Exhibits summarizing meal purchase invoices/receipts and documents produced by Defendant Bobo in response to a federal grand jury subpoena.

"Rule 1006 of the Federal Rules of Evidence permits a proponent to 'use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court.' Fed. R. Evid. 1006.  Such summaries are properly admissible when '(1) the charts fairly summarize voluminous trial evidence; (2) they assist the jury in understanding the testimony already introduced; and (3) the witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary.'" *United States v. Hawkins*, 796 F.3d 843, 865 (8th Cir. 2015) (quoting *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005) (internal quotations omitted).  Here, the summary exhibits satisfy all of the *Green* admissibility requirements: they will fairly summarize voluminous trial evidence; they will assist the jury in understanding the testimony already introduced, and the witnesses who prepared the summary exhibits will be subject to cross-examination.

The Eighth Circuit has consistently approved the admission of summary charts, even those containing "assumptions and conclusions," as long as the information in the chart is supported by evidence.  *United States v. Wainright*, 351 F.3d 816, 820–21 (8th Cir. 2003).  "Summary charts may be used when they help in understanding testimony already introduced and the preparing witness is subject to cross-examination with all documents used to prepare the summary."  *Id*. (citing *United States v. Caswell*, 825 F.2d 1228, 1235 (8th Cir.1987)).

The fact that here, the underlying evidence for some of the summary exhibits will have been admitted, does not impact the admissibility of the summary exhibits under Rule 1006. *See United States v. Needham*, 852 F.3d 830, 838 (8th Cir. 2017) (finding "no reversible error in the district court's admission of Government's [Summary] Exhibit 51 in part on the basis that

26

"Government's Exhibit 51 consists mostly of properly admitted evidence contained elsewhere in the record") (emphasis added); *see, e.g.*, *United States v. Milkiewicz*, 470 F.3d 390, 396 (1st Cir. 2006) (noting that the evidence underlying Rule 1006 summaries need not be introduced into evidence, but nothing in the rule forecloses a party from doing so).

The charts at issue here do not reflect characterizations of witness testimony, but instead, reflect the contents of the underlying records in an organized way designed to aid the jury in its understanding of the evidence. *See United States v. Downen*, 496 F.2d 314, 321 (10th Cir. 1974) (a summary exhibit "may guide and assist the jury in understanding and judging the factual controversy."). The charts are designed to achieve Rule 1006's purpose of "assist[ing] the jury in understanding the evidence, particularly in cases involving 'complex testimony or transactions.'" *United States v. Crockett*, 49 F.3d 1357, 1361–62 (8th Cir. 1995). See also *United States v. Orlowski*, 808 F.2d 1283, 1289 (8th Cir. 1986); *United States v. Nelson*, 735 F.2d 1070, 1072 (8th Cir. 1984). Where, as here, the underlying records are voluminous and complex, the aim of Rule 1006 is accomplished through the admission of charts that fairly summarize the evidence and aid the jury in their understanding of that evidence. *Hawkins*, 796 F.3d at 843.

Further, any dispute Defendant Bobo may have with the accuracy of the 1006 summary charts will go to the weight of those charts, not their admissibility. In *Smallwood*, 443 F.2d at 540, the Eighth Circuit found no abuse of discretion in the trial court's admission of charts that summarized other exhibits, and further noted that any alleged inaccuracies in the summaries go, to the weight to be accorded the summaries, not to their admissibility. 443 F.2d at 540 (citing *Elbel v. United States*, 364 F.2d 127, 139 (10th Cir.), *cert. denied* 385 U.S. 1014 (1967); *Hedrick v. United States*, 357 F.2d 121, 123 (10th Cir. 1966); *McDaniel v. United States*, 343 F.2d 785, 789 (5th Cir.), *cert. denied* 382 U.S. 826 (1965); *see also* Devitt & Blackmar, Federal Jury Practice

and Instructions (Third Edition) Section 15.23.  Thus, it is clearly within the discretion of the trial court to allow the use of charts at trial where they would be of assistance to the jury.  That exercise of the trial court's discretion cannot be disturbed, absent a clear showing of abuse and resulting prejudice to the opposing party.  *Boston Securities, Inc. v. United Bonding Insurance Co.*, 441 F.2d 1302, 1303 (8th Cir. 1971).  *See also*, *United States v. Brickey*, 426 F.2d 680, 686-87 (8th Cir.), *cert. denied*, 400 U.S. 828 (1970); *Ping v. United States*, 407 F.2d 157, 159 160 (8th Cir. 1969) (summaries of checking accounts records in criminal tax case).

In short, the above-proposed summary exhibits at issue here should be admitted because they fairly summarize voluminous trial evidence (*i.e.*, voluminous bank records, and business records), will assist the jury in understanding the testimony already introduced, and a witness who prepared the charts is subject to cross-examination with all documents used to prepare the summary.

9.    **Motion *in Limine* to Permit Use of Demonstrative Exhibits with Summary Witness Under Federal Rule of Evidence 107(a)**

At trial, the United States intends to elicit summary testimony from a federal investigator. "The testimony of a summary witness may be received so long as she bases her summary on evidence received in the case and is available for cross-examination."  *United States v. Ellefsen*, 655 F.3d 769, 780 (8th Cir. 2011) (quoting *United States v. King*, 616 F.2d 1034, 1041 (8th Cir. 1980)); *see also United States v. Robinson*, 439 F.3d 777, 781 (8th Cir. 2006) (same). Applied here, the summary testimony elicited from the federal investigator will involve only admitted evidence, and that federal investigator will be available for cross-examination.  Such testimony is necessary to educate the jury here because this case involves voluminous evidence, including bank records, electronic correspondence, reimbursement claim records, invoices, and purchase records.

28

The testifying federal investigator will use illustrative aids to facilitate her testimony summarizing such voluminous evidence, as permitted by Rule 107.  Rule 107 provides that "[t]he court may allow a party to present an illustrative aid to help the trier of fact understand the evidence or argument if the aid's utility in assisting comprehension is not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time."  That is exactly what the illustrative aids will do here by helping the jury understand how different parts of the voluminous evidence relate to one another, which will streamline the United States' presentation of its case in chief and avoid unnecessarily delaying the trial or wasting the Court's and the jury's time.

Even prior to the enactment of Rule 107 to specifically address the permissible use of illustrative aids (traditionally referred to as demonstrative exhibits), the Eighth Circuit consistently held, and the Federal Rules of Evidence recognized, that "[d]emonstrative exhibits may be admitted, at the trial court's discretion, as 'educational tool[s] for the jury.' Rule 901 mandates only that the authentication requirement 'as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.' Fed. R. Evid. 901(a). 11 The Rule then notes that the '[t]estimony of [a] witness with knowledge' suffices. Fed. R. Evid. 901(b)(1)." *United States v. Two Elk*, 536 F.3d 890, 905 (8th Cir. 2008) (quoting *Wipf v. Kowalski*, 519 F.3d 380, 387 (7th Cir. 2008)); *see also United States v. Fechner*, 952 F.3d 954, 960 (8th Cir. 2020) (finding no abuse of discretion where "the demonstrative exhibits at issue merely provided a visual aid during Agent Thomas's testimony regarding other evidence. The videos described in the demonstrative exhibits were properly submitted into evidence, and the district court did not abuse its discretion by receiving the summary demonstrative exhibits.").

Here, where the testimony of the testifying federal investigator will summarize voluminous evidence, visual illustrative aids outlining key portions of that evidence is of particular importance in "educating the jury" and making the testimony understandable. The use of these aids at trial is expressly permitted by the rules of evidence, Fed. R. Evid. 107, and Eighth Circuit precedent, *see Crockett*, 49 F.3d at 1361–62; *Downen*, 496 F.2d at 321.

**10.     Motion *in Limine* to Admit Business and Public Records**

**A.     The United States Moves to Admit Business Records Under Federal Rules of Evidence 803(6) and 902(11).**

On September 20, 2025, the United States provided notice of its intends to offer business records under Federal Rules of Evidence 803(6) and 902(11). The business records that the United States will admit at trial include the following:

| # | Business Records | Cert. Produced? | Bates Identification |
|---|---|---|---|
| 1 | Block Incorporated's financial records | Yes | GOV-0028921 thru GOV-0028951 |
| 2 | First Community Credit Union records | Yes | GOV-0015970 thru GOV-0018274 |
| 3 | Enterprise Bank and Trust records | Yes | GOV-0013082 thru GOV-0015917 |
| 4 | Freedom Title records | Yes | GOV-0029615 thru GOV-0029819 |
| 5 | Gordon Food Service records | Yes | GOV-0018339 thru GOV-0020868, GOV-0020675 |
| 6 | J.P. Morgan Chase records | Yes | GOV-0020979 thru GOV-0023694 |
| 7 | Missouri Department of Health and Senior Services records | Yes | GOV-0001571 thru GOV-0001573, GOV-0003456 thru GOV-0003605, |

| | | | GOV-0023700 thru GOV-0023855, GOV-0023747 thru GOV-0023757, GOV-0023906 thru GOV-0024110, GOV-0024285 thru GOV-0024596, GOV-0024735 thru GOV-0025041, GOV-0025066 thru GOV-0025089, GOV-0025091 thru GOV-0025113 GOV-0025779 thru GOV-0025780, GOV-0025815 thru GOV-0025822, GOV-0025823 thru GOV-0025837, GOV-0025930 thru GOV-0025989, GOV-0025990 thru GOV-0025997, GOV-0026355 thru GOV-0026362, GOV-0026370, GOV-0026897 thru GOV-0026898, GOV-0026921 thru GOV-0026923, GOV-0030038 thru GOV-0030053, GOV-0030673 |
|---|---|---|---|
| 8 | Navy Federal Credit Union records | Yes | GOV-0026924 thru GOV0027229 |
| 9 | People's National Bank records | Yes | GOV-0027230 thru GOV-0027997 |
| 10 | Sam's Club records | Yes | GOV-0027998 thru GOV-0028021, GOV-0030056 |
| 11 | Title Plus records | Yes | GOV-0028022 thru GOV-0028278 |

| 12 | Vaccaro and Sons Produce records | Yes | GOV-0028298 thru GOV-0028920, GOV-0030676 |
|----|----------------------------------|-----|-------------------------------------------|
| 13 | Coldwell Banker records. | Yes | GOV-0031948 thru GOV-0032054 |
| 14 | Houston Auto Credit records | Yes | GOV-0030683 thru GOV-0030684 |
| 15 | Victory Church records | Yes | GOV-0030707 thru GOV-0031443 |
| 16 | Google Incorporated records | Yes | GOV-0030677, GOV-0031444 thru GOV-0031947 |
| 17 | Food 4 Hire records | Yes | GOV-0018275 thru GOV-0018338, GOV-0030674 |

The United States respectfully requests a pretrial determination of the admissibility of these self-authenticating business records to ensure the efficiency of the trial.

Records may be admitted as business records, pursuant to Fed. R. Evid.  902(11), which provides that "Certified Domestic Records of a Regularly Conducted Activity" are self-authenticating and do not require witness testimony if the "original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." *Id.*; *see also United States v.  Azure*, 801 F.2d 336, 342 (8th Cir.  1986) ("Before the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record – and must make the record and certification available for inspection – so that the party has a fair opportunity to challenge them."); Fed. R. Evid.  902(11).

Under Eighth Circuit precedent, the "custodian" or "qualified person" making the Rule 902(11) certification, or testifying at trial, does not have to be the person who created the records or even know who created the records. *United States v.  Franks*, 939 F.2d 600, 601–02 (8th Cir.  1991). Nor is the custodian or qualified person required to have been involved in the maintenance

32

and storage of the records. *Id.* A wealth of Eighth Circuit precedent has acknowledged the admissibility of relevant records pursuant to Fed. R. Evid. 902, recognizing that the admission of records pursuant to a 902 certificate does not create any Confrontation Clause issues. *See, e.g.*, *United States v. Johnson*, 688 F.3d 494, 504 (8th Cir. 2012) (citing *United States v. Yeley–Davis*, 632 F.3d 673, 680 (10th Cir.2011) ("[C]ertificates of authenticity presented under Rule 902(11) are not testimonial."); *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (holding that a "written certification attesting to the authenticity of a business record" was non-testimonial under *Crawford* ); *United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir. 2005) (holding that "a routine certification by the custodian of a domestic public record . . . [is] not testimonial in nature"); *cf. United States v. Watson*, 650 F.3d 1084, 1090 (8th Cir. 2011)).

Applied here, the United States has satisfied the notice requirements of 902(11) for each of the above-referenced certified business records. Further, the 902 certificates disclosed to Defendant Bobo each reflect that the records contained comply with the provisions of Fed. R. Evid. 803(6) in that: (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; and (C) making the record was a regular practice of that activity. Because the records the United States has identified above comply with the provisions of Fed. R. Evid. 902 and Fed. R. Evid. 803(6), the United States respectfully requests that this Court admit those exhibits pursuant to 902(11).

**B.      The United States Moves to Admit Business Records from Google Incorporated Under Federal Rule of Evidence 803(7).**

At trial, the United States will admit evidence produced to federal investigators by Google Incorporated—demonstrating that Google does not have any servers located in Missouri. The Google records are admissible at trial. Indeed, the records will be authenticated by a federal

investigator, who will testify to receiving the records during the trial. The records are directly relevant to the third element of Wire Fraud, as they demonstrate that Defendant Bobo's Gmail messages traveled through interstate commerce. The records are also admissible under Federal Rule of Evidence 803(7), because the "[e]vidence . . . is not included in a record described in [Fed.R.Evid. 803(6)]" and "the evidence is admitted to prove that the matter did not occur or exist;" and the "record was regularly kept for a matter of that kind." Fed.R.Evid. 803(7). Because the certification from Google satisfies all of the requirements under Rule 803(7), the evidence is admissible. Therefore, the United States moves, *in limine*, for a Court order granting the admissibility of this evidence.

    **C.**    **The United States Moves to Admit Missouri Secretary of State Public Records Under Federal Rules of Evidence 803(8) and 902(1).**

At trial, the United States will admit records obtained from the Missouri Secretary of State's Office. These records are business registration records that Defendant Bobo submitted to the Missouri Secretary of State's Office for two of her businesses: Castlecare Unlimited L.C. and New Heights Community Resource Center. Because these records meet the requirements under Rule 803(8) and 902(1), the United States seeks an order from this Court granting their admissibility at trial.

**11.**    **Motion *in Limine* to Preclude Defendant Bobo from Claiming Ignorance of Law or Mistake of Law**

The United States moves *in limine* for an order precluding any testimony, evidence, argument, or cross-examination designed to show that Defendant Bobo allegedly believed her conduct was legal.  The United States anticipates that defense counsel may argue—and attempt to admit evidence in support of her argument—that Defendant Bobo is not guilty because she

34

allegedly believed her conduct was legal or was unaware of the statutes proscribing her conduct. Such an argument is inconsistent with the law and barred by binding precedent.

It is a "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally." *United States v. Moreira-Bravo*, 56 F.4th 568, 578 (8th Cir. 2022) (quotation omitted); *see also United States v. Cheek*, 498 U.S. 192, 199 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system."). Court have recognized an ignorance-of-law defense only in the narrow circumstance where an element of the crime is a "voluntary, intentional violation of a known legal duty" or "specific intent to violate the law." *See United States v. Jirak*, 728 F.3d 806, 813–14 (8th Cir. 2013) (rejecting argument defendant was entitled "to present evidence showing what he believed the law to be at the time of his alleged criminal conduct" because "willfulness" was not element of charged offense)*; see also Bryan v. United States*, 524 U.S. 184, 194–95 (1998) (distinguishing tax crimes and cash structuring offenses because they involve "highly technical statutes" warranting an "exception to the traditional rule" and requiring the defendant to "have knowledge of the law"). Here, the limited exception to this maxim does not apply; none of the charges in the Indictment require the United States to prove that Defendant Bobo acted with the specific intent to violate the law.

Instead, all of the charged offenses require only "knowing" state of mind, and the Supreme Court has squarely held that ignorance of the law is no defense for such crimes. *See Bryan*, 524 U.S. at 193–96. Under Supreme Court precedent, to establish a "knowing" violation, the United States need only prove that the defendant had "knowledge of the facts that constitute the offense." *Bryan*, 524 U.S. at 192–93. According to the Court, the United States is not required to prove that the defendant knew that his acts were unlawful. *Id.* Likewise, the Eighth Circuit has

35

consistently held that knowing violations of a statute do not require any proof of intent to violate the law or knowledge of the law. *United States v. Dockter*, 58 F.3d 1284, 1288 (8th Cir. 1995); *United States v. Udofot*, 711 F.2d 831, 835–37 (8th Cir. 1983); *United States v. Enochs*, 857 F.2d 491, 493 (8th Cir. 1988); *United States v. Hutzell*, 217 F.3d 966, 968 (8th Cir. 2000); *United States v. Sinskey*, 119 F.3d 712, 715–16 (8th Cir. 1997); *United States v. Farrell*, 69 F.3d 891, 893 (8th Cir. 1995); *United States v. Yermian*, 468 U.S.  63, 75 (1984); *see also United States v. Wilson*, 133 F.3d 251, 262 (4th Cir. 1997) ("If we construe the word 'knowingly' as requiring that the defendant must appreciate the illegality of his acts, we obliterate its distinction from the willfulness.").

In sum, under binding precedent, Defendant Bobo cannot argue—or attempt to adduce any evidence in support of an argument—that she did not know the law or that she believed her actions complied with the law.  Therefore, the United States respectfully requests that the Court preclude any attempts from Defendant to raise or pursue such an improper defense at trial through testimony, evidence, argument, or cross-examination.

**12.    Motion *in Limine* to Preclude Defendant Bobo from Commenting on Potential Penalties or Sentence**

The United States moves this Court to enter an order prohibiting Defendant Bobo or her attorneys from commenting on the potential punishment or sentencing if Defendant is convicted. It is black letter law that "[s]entencing is generally one of the areas barred from comment during closing arguments to the jury because the jury is supposed to be concerned solely with the determination of guilt."  75A Am. Jur. 2d Trial § 470; *Rogers v. United States*, 422 U.S. 35, 40 (1975) (the jury should reach its verdict without regard to the sentence that might be imposed). Indeed, Eighth Circuit Model Jury Instruction No. 3.12 provides that "if the defendant is found guilty, the sentence to be imposed is [the Court's] responsibility.  [The jury] may not consider

36

punishment in any way in deciding whether the [government] . . . has proved its case beyond a reasonable doubt."  In other words, where the Court, rather than the jury imposes punishment, "the duration of imprisonment for the crime in question is not a proper subject of comment by counsel." 75A Am. Jur. 2d Trial § 470.

Likewise, any argument or statement about potential civil remedies in this case is similarly improper and must be precluded.   The availability of civil remedies is irrelevant to the determination of guilt or innocence in a criminal case.  *See United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) (district court properly excluded evidence of civil remedy because "it opened the door to jury nullification, by inviting the jury to reason that the IRS should have continued to pursue the matter civilly rather than criminally"); *United States v. Sinagra*, 584 F. App'x 628, 630 (9th Cir.  2014) (holding that it would be improper "to instruct the jury that 18 U.S.C. § 1030 is a civil as well as a criminal statute"); *United States v. Buras*, 633 F.2d 1356, 1360 (9th Cir. 1980) (explaining that the availability of civil remedies "is irrelevant to the issue of criminal liability" and finding that a jury instruction regarding civil remedies "would serve only to confuse the jury"); *United States v. Burkhart*, 501 F.2d 993, 996 (6th Cir. 1974) ("The matter of civil liability is not an issue when a jury is determining a defendant's criminal liability for tax evasion."); *United States v. Bradford*, No. 219CR00222GMNBNW1, 2023 WL 6794243, at *7 (D. Nev. Oct. 12, 2023) ("[C]ourts have repeatedly rejected criminal defendants' attempts to introduce evidence, or to obtain jury instructions indicating, that the Government could have pursued the defendants through civil means, rather than through criminal prosecution.").

Obviously, Defendant's potential punishment or the factors supporting that punishment should not be a consideration in the jury's determination of guilt or innocence. Therefore, the United States requests that this Court enter an order precluding Defendant or her attorneys from

37

attempting to secure the jury's sympathy by commenting on the potential punishment or sentencing should Defendant be convicted.

**13.    Motion *in Limine* to Preclude Evidence or Argument Relating to Vindictive or Selective Prosecution**

The United States moves *in limine* to exclude any evidence or argument relating to vindictive or selective prosecution.  In particular, the United States moves to preclude evidence or argument at trial that (1) law enforcement chose to target Defendant Bobo and not other Missouri DHSS contractors, or (2) other co-conspirators have not faced charges.  To succeed in raising a selective-prosecution claim, a defendant must demonstrate "1) that he has been singled out for prosecution while others similarly situated have not been prosecuted for similar conduct and 2) that the government's action in thus singling him out was based on an impermissible motive such as race, religion, or the exercise of constitutional rights." *United States v. White*, 928 F.3d 734, 742–43 (8th Cir. 2019).  This standard is a "demanding one." *Id.* at 743 (quoting *United States v. Armstrong*, 517 U.S. 456, 463 (1996)).

The Eighth Circuit has made clear that claims of vindictive or selective prosecution are issues for the court to decide, not a jury. *United States v. Clay*, 618 F.3d 946, 956 (8th Cir. 2006). The sole issue before the jury is whether the defendants on trial are guilty of the crimes charged against them, and evidence and arguments at trial should focus on that issue alone. *See United States v. Abboud*, 438 F.3d 554, 579 (6th Cir. 2006) ("[T]he defense of selective prosecution is a matter that is independent of a defendant's guilt or innocence, so it is not a matter for the jury."); *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (holding selective prosecution defense to be "an issue for the court rather than the jury," and finding no abuse of discretion in district court's precluding the defense from making selective prosecution claim in closing argument); *United States v. Goulding*, 26 F.3d 656, 667 (7th Cir. 1994) (finding district court did not abuse

38

discretion in prohibiting "an inquiry into the mental states of the investigating officers since such evidence was irrelevant").    Accordingly, defense counsel should be precluded from making any selective or vindictive prosecution arguments at trial in this case.

**14.    Motion *in Limine* to Preclude Impermissible Argument as to Missing Witnesses**

In the present case, a number of witnesses, both civilian and law enforcement, played a role in the investigation.  The United States has provided all discoverable law enforcement reports, including expert reports, to Defendant in discovery.  The United States anticipates that it will not call as witnesses all of the individuals identified in those reports in its case in chief.  However, the identities of those individuals are known to Defendant, and should they desire to call any of those individuals as witnesses, Fed. R. Crim. P. 17 provides them with the necessary subpoena authority to do so.  Because these witnesses are all known to Defendant, and not within the unique control of the United States, the United States moves to prohibit Defendant from making an improper argument as to the failure of the United States to call certain witnesses at the time of trial.

As the notes to the Eighth Circuit Model missing witness instruction (4.16) indicate, the request for a missing witness instruction is to "be applied with caution," noting that "[t]his is because the applicable rule in this Circuit is that:

> Absent unusual circumstances such as knowingly concealing evidence favorable to a defendant, the government has a wide discretion with respect to the witnesses to be called to prove its case. The government is not ordinarily compelled to call all witnesses competent to testify including special agents or informers.

*United States v. Williams*, 604 F.2d 1102, 1117 (8th Cir. 1979); *United States v. Mosby*, 422 F.2d 72, 74 (8th Cir. 1970).  The instruction has been held *properly refused* in each of the following circumstances:

a.      where the ability to produce the witness was not solely or otherwise in the power of the government such as where a witness could not testify due to illness (*Williams*, 604 F.2d at 1117);

b.      where the witness was not subpoenaed by either party (*Williams*, 604 F.2d at 1120; *United States v. Higginbotham*, 451 F.2d 1283, 1286 (8th Cir. 1971));

c.      where the witness was argued to be "unavailable" because he worked for the government (*United States v. Anders*, 602 F.2d 823, 825 (8th Cir. 1979));

d.      where the witness/informant's whereabouts were no longer known to the government (*United States v. Johnson*, 562 F.2d 515, 517 (8th Cir. 1977));

e.      where there was no showing that the government possessed the sole power to produce the witnesses (*United States v. Kirk*, 534 F.2d 1262, 1280 (8th Cir. 1976));

f.      where the defendant has made no motion to produce or attempt to subpoena the witness, (*United States v. Williams*, 481 F.2d 735, 737-8 (8th Cir. 1973)).

In the present case, the United States is unaware of any witness uniquely in the power of the United States who is not equally available to Defendant.  In *United States v. Cole*, 380 F.3d 422 (8th Cir. 2004), the Eighth Circuit found no error in the district court's refusal to give a missing witness instruction, noting that "[a] missing witness instruction is generally not appropriate where the defense does not show that the government possesses the sole power to produce the witness." *Id.* at 427 (citing *United States v. Martinez-Figueroa*, 363 F.3d 679, 682 (8th Cir. 2004)).  In sum, Defendant should be prohibited from making improper argument relating to purportedly missing witnesses.

**15.      Motion *in Limine* Pursuant to Fed. R. Crim. 16(b) to Exclude All Evidence Not Produced in Reciprocal Discovery**

During the pendency of this case, the United States has requested reciprocal discovery from Defendant pursuant to Fed. R. Evid. 16(b)(1)(A) and (B).  The reciprocal discovery rule, Rule 16(b)(1), states that if the United States complies with a defendant's requested disclosures, which here, the United States has, the defense must provide the United States, upon request, with all of the items identified in subsections (A) and (B), to wit:

(1) Information Subject to Disclosure.

(A) Documents and Objects.  If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
    (i) the item is within the defendant's possession, custody, or control; and
    (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

(B) Reports of Examinations and Tests.  If a defendant requests disclosure under Rule 16(a)(1)(F) and the government complies, the defendant must permit the government, upon request, to inspect and to copy or photograph the results or reports of any physical or mental examination and of any scientific test or experiment if:
    (i) the item is within the defendant's possession, custody, or control; and
    (ii) the defendant intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony.

In *United States v. Eason*, 829 F.3d 633 (8th Cir.  2016), the Eighth Circuit affirmed the district court's exclusion of evidence the defendant attempted to admit at trial, despite having failed to provide the evidence in discovery pursuant to the United States' request for reciprocal discovery, finding that "[t]he defense's failure to turn them [the evidence at issue] over to the government was a violation of that [Fed.R.Evid.16(b)(1)] rule" and that therefore, exclusion was an appropriate sanction.  *Id.*  at 639.

Here, the United States first made its request for reciprocal discovery in its initial discovery letter dated November 14, 2023, and has since reiterated that request, including in open court during the *Frye* hearing and status conference on September 2, 2025.  As of the time of this filing, the United States has not received any disclosures of documents that Defendant Bobo intends to use in her case-in chief.  As such, the United States respectfully requests that this Court preclude Defendant from admitting at trial evidence not produced by October 9, 2025, the date of the final pretrial conference in this matter.

**16.**    **Motion *in Limine* to Permit the Introduction of Defendant Bobo's Email Records**

The United States intends to introduce at trial evidence from Defendant Bobo's email account (csbobo1@gmail.com). These records include Google's subscriber information for Defendant Bobo's email account, as well as emails from that email account. As for records containing Google's subscriber information for Defendant Bobo's email account, these records are accompanied by a certification that complies with Federal Rule of Evidence 902(11) and establishes the conditions of Federal Rule of Evidence 803(6). Therefore, these records are admissible because they are self-authenticating and excluded from the rule against hearsay.

As for the emails from Defendant Bobo's email account that the United States will introduce at trial, the United States will authenticate those records at trial under Federal Rule of Evidence 901, which provides that evidence can be authenticated by "distinctive characteristics and the like," such as by its "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Specifically, the United States will link these emails to Defendant Roethle through numerous pieces of evidence, including the following: (1) the email account is subscribed in Defendant Bobo's name; (2) the email account lists an alternative email address in Defendant Bobo's name;

(3) the email address for the email account includes Defendant Bobo's first initial, middle initials, and her last name (csbobo1@gmail.com); (4) Defendant Bobo produced many emails from that account in response to a grand jury subpoena; (5) the emails sent to the email account are addressed to Defendant Bobo, including emails that she produced in response to a grand jury subpoena; (6) many of the emails sent from the email account contain Defendant Bobo's name in the body of the email; and (7) many of the emails in the email account contain information that Defendant Bobo would know.

Taken together, these distinctive characteristics are more than sufficient to authenticate the emails from Defendant Bobo's email account. *See, e.g.*, *United States v. Perez*, 61 F.4th 623, 627 (8th Cir. 2023) (concluding that the Government sufficiently linked the defendant (Vincent Perez) to a social media account through distinctive characteristics such as subscriber information that contained the defendant's personal biographical information, a message in which the account user referred to himself as "Vinny," evidence that the account was created using the defendant's Gmail address, and evidence that the account contained personal photographs of the defendant); *United States v. Fluker*, 698 F.3d 988, 998–99 (7th Cir. 2012) (determining that the Government properly authenticated emails where the email address bore the acronym of a company board of which the author was a member and the contents of the emails contained information that the author would know); *United States v. Safavian*, 435 F.Supp.2d 36, 39–40 (D.C.C. 2006) (explaining that e-mails may be authenticated by examination of their distinctive characteristics, including e-mail addresses that "contain the name of the person connected to the address" and emails that "contain the name of the sender or recipient in the bodies of the e-mail, in the signature blocks at the end of the e-mail, [or] in the 'To:' and 'From:' headings").

## CONCLUSION

WHEREFORE, the United States respectfully requests that this Court **GRANT** the Motions *in Limine* of the United States.


Respectfully submitted,

THOMAS C. ALBUS
United States Attorney


*/s/ Derek J. Wiseman*
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney


## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2025, the foregoing was filed electronically and served upon all counsel of record by operation of the court's electronic filing system.


*/s/  Derek J. Wiseman*
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney